The judgment is therefore affirmed.

---

St. Louis & San Francisco Railroad Company *v.* Petties.

Opinion delivered June 19, 1911.

1. Carriers—failure to furnish seat to passenger.—A railway company is not liable for failure to furnish a seat to a passenger where, on account of an unusual crowd, which had filled all of the coaches before she boarded the car, it was impossible to do so. (Page 418.)

2.  Same—failure to furnish seat.—An instruction, in an action against a railroad company for failure to furnish a seat to a passenger, to the effect that if white people came into the coach for colored people and so crowded it that plaintiff, a colored woman, was compelled to stand up on her trip she was entitled to recover, was erroneous where it was proved that unexpected or extraordinary circumstances occasioned the necessity for taking an unusual number of passengers.   (Page 418.)

3.  Same—failure to furnish seat.—The fact that a railroad company, in an emergency which rendered it impossible to accommodate all its passengers, failed to eject a coach load of people of one race in order to furnish seats for three or four passengers of another race does not render it liable for failure to furnish a passenger a seat.   (Page 419.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; reversed.

*W. F. Evans* and *B. R. Davidson,* for appellant.

Appellee accepted the transportation, knowing the crowded condition of the coach, did not notify the conductor of any special reason why she should have a seat, nor of any reason why standing would injure her, but remained in the coach and alighted at her destination without complaint. She cannot recover. 75 Ark. 242. This was an extraordinary occasion, impossible to have been foreseen and provided for. Even where a railroad company is advised of unusual travel, it is not required to do more than exercise ordinary care to provide transportation. 2 Hutchinson, Carriers, § 1114; 52 N. H. 596; 13 Am. Rep. 97; 162 Fed. 693; 81 Ark. 373. Where, as in this case, the passenger elects to go into a crowded coach and remain standing, rather than to abandon the journey until another train can be had, the carrier is not, as a matter of law, chargeable with negligence in failing to provide a seat. 2 Hutchinson, Carriers, § 1113; 114 U. S. 474; 77 S. W. 885. It was appellee's duty to get off at once if she did not see proper to stand. 85 Tenn. 627; 4 Am. St. Rep. 776. She is not permitted to accept the benefits and travel without a seat and repudiate the burdens. 53 Mo. 317; 45 Ark. 368-371-372.

*Sam R. Chew,* for appellee.

I.   It is the positive duty of railroad companies in this State to furnish sufficient accommodations for the transportation of all passengers who seek passage over their lines of road.   Kirby's

ARK.] ST. LOUIS & S. F. RD. CO. v. PETTIES. 417

Dig., § 6595. It was appellant's duty to inform appellee at the time she applied for her ticket of the fact that the number of passengers who had offered themselves for transportation were in excess of the number it could accommodate and transport, so that she might then have elected whether she would accept the carriage without a seat. 2 Hutchinson, Carriers, § 1113; 45 Ark. 368. Fort Smith is a division point, where appellant maintains extra cars. Appellant cannot excuse itself on the ground of an insufficient number of cars. 2 Hutchinson on Carriers, § 1114; 8 Eng. L. & E. 362; 27 Ind. 59.

2. It was appellant's duty to furnish appellee with a seat in this car, because it was a car set apart for negro passengers, into which appellant had no right under the law to permit white passengers to intrude and stay, but was under the positive duty to provide separate coaches and equal accommodations for passengers of each race. Kirby's Dig., § § 6222-6232.

McCULLOCH, C. J. The plaintiff, who was a young colored woman, took passage on one of defendant's trains at Ft. Smith, *en route* to Van Buren, Arkansas, a distance of about five miles. It was a fast train, known as the "Cannon Ball," and made the trip to Van Buren in about fourteen minutes. The plaintiff purchased a ticket, and rode to Van Buren, but failed to get a seat, and was compelled to remain standing throughout the journey. She claims to have suffered injury by reason of having to stand, and the trial jury awarded her damages in the sum of $35. There was an unusually large crowd at the station to board the train on account of the meeting of two fraternal societies in that city at the time, and when the train stopped a large crowd rushed upon it, far over-taxing its capacity. The plaintiff went into the coach set apart for colored people, and found it filled with white people except that there were three colored men in the coach. She gave up her ticket to the conductor after the train started, and testified that she asked him to get her a seat, but this is denied by the conductor. She stated that she suffered from standing and from the motion of the train, and that certain female trouble resulted from this. Other passengers testified that plaintiff gave no appearance of suffering, and that during the journey she appeared to be in a jovial mood, and was "joshing" the colored porter. The defendant introduced testimony tending to

show that, on the occasion named, there was an unusual emergency on account of the extremely large crowd, which could not be anticipated; that passengers, male and female, were standing in the aisles all through the train except in the Pullman coaches, and there was no place into which to remove white passengers from the coach intended for colored people. The conductor also testified that on account of the crowd in all the coaches he could not pass through, and that it would have been impossible to move passengers from one coach to another between Ft. Smith and Van Buren. Suffice it to say that the testimony was sufficient to warrant a finding that an extraordinary emergency existed on that occasion which the railway company could not and did not anticipate.

The defendant asked the court to give the following instruction, which was refused:

"1. If you find from the evidence that the plaintiff boarded the train at a time when there was an unusual crowd; that on account of the unusual crowd the conductor was unable to give her a seat; that the crowd pressed into the negro coach, and there was not room to give all the passengers seats, if the plaintiff did not call upon the conductor to give her a seat, then you will find the issues for the defendant."

The court gave the following instruction over defendant's objection:

"1. If white people came into the car for colored people, and so crowded it that plaintiff was thereby compelled to stand up in the car on the trip from Ft. Smith to Van Buren in this State, you will find for the plaintiff, and assess her damages at such sum as will, from the evidence, in your judgment fairly compensate her for the inconvenience of standing up in the car."

The court erred in refusing to give the instruction asked by defendant, and also in giving the other instruction quoted above. Mr. Hutchinson states the law on this subject as follows:

"And any unexpected or extraordinary circumstances occasioning the necessity for taking on an unusual number of passengers, by which its vehicles were filled before the person desiring to be carried had applied, under circumstances which made it impossible to remedy the inconvenience, would, as in the case

of the refusal to accept goods for carriage by the common carrier, excuse the refusal to carry persons as passengers, by railway companies as well as other passenger carriers." 2 Hutchinson on Carriers, § 1114.

At another place in the same volume (§ 1113) the author says:

"It is not negligence *per se* for a carrier to fail to furnish a passenger with a seat. Such a failure is only evidence of negligence, to be weighed by the jury. There are circumstances under which a passenger might prefer to enter a car and stand up, rather than not make the journey. In such case it cannot be said as a matter of law that the carrier is negligent in permitting him to exercise such privilege."

Now, the fact that the coach marked for colored people was crowded with white people did not render the company liable in the face of an unanticipated emergency which rendered it impossible to give the plaintiff a seat. The railway company may be liable for the statutory penalty for permitting white and colored passengers to ride in the same coach, and passengers of different races may be held guilty of an offense in occupying the same coach, but the fact that the railway company, in an emergency which rendered it impossible to accommodate all the passengers, failed to eject a coach load of people of one race in order to accommodate three or four passengers of the other race does not necessarily render it liable in damages for failure to give a passenger a seat. The law requires equal but separate accommodations sufficient for passengers of both races, but this may be prevented on account of some sudden emergency which could not be anticipated, and the company might be compelled on that account to deny sufficient accommodations to one race or the other. *Chesapeake & Ohio Ry. Co.* v. *Commonwealth*, 199 Ky. 519, 84 S. W. 566. The statute does not compel the company to provide accommodations equally for the use of the two races, but what is required is that they be given accommodations of equal comfort and convenience. This may, however, be rendered impossible on account of an unforeseen emergency, and under those circumstances a passenger cannot claim damages because he is denied accommodations which are furnished to passengers of the other

race. When the accommodations are insufficient for all on account of an unforeseen demand, the full duty of the railway company under the law is performed by furnishing accommodations as far as possible to those who apply, even if passengers of one race or the other should be denied. The plaintiff knew, when she boarded the train and entered the coach, that it was crowded to the extent that it was impossible for her to get a seat unless the white passengers should be expelled. This, as we have already seen, she had no right to demand, for an emergency existed which rendered it impossible to accommodate them elsewhere. She was not misled nor induced to believe that she would be given a seat if she entered. Therefore she is not entitled to damages unless it appears that the company failed to exercise care to furnish accommodations for the number of passengers which it had reason to anticipate. The judgment is reversed, and the cause remanded for a new trial.

KIRBY, J., dissents.

