MICHAEL FOHL v. CHICAGO & NORTHWESTERN RAILWAY COMPANY.[1]

November 8, 1901.

Nos. 12,537—(26).

**New Trial.**

From an examination and consideration of the record and proceedings in this action it is *held* that the trial court should, in the exercise of its discretion, have granted a new trial on the ground that the evidence is insufficient to sustain the verdict, and it was error to refuse it.

**Village of Sleepy Eye.**

The village of Sleepy Eye, incorporated by Sp. Laws 1879, c. 36, is, by the terms of its charter, controlled and governed in the matter of laying out and opening streets within the village limits by the general statutes conferring upon town supervisors the power to lay out and open highways, and is authorized to lay out and open such streets to the width of sixty-six feet only, except when petitioned for by all the property owners adjoining the proposed street.

Petition by Michael Fohl and others to the village council of the village of Sleepy Eye, to open and extend a street over the right of way of the Chicago & Northwestern Railway Com-

[1] Reported in 87 N. W. 919.

pany. The prayer of the petitioners having been denied, they appealed to the district court for Brown county. The appeal was heard before Webber, J., and a jury, which rendered a verdict that the order appealed from be reversed and that the street be laid out and opened. From an order denying a motion for a new trial, the railway company appealed to the supreme court. Reversed.

*Brown, Abbott & Somsen,* for appellant.

*Somerville & Olsen,* for respondent.

BROWN, J.

A petition was duly presented to the common council of the village of Sleepy Eye, signed by the requisite number of freeholders, praying that body to open and extend Fourth street over and across the right of way of the Winona & St. Peter Railway Company as the same extends through the village. The council, after due consideration, denied the prayer of the petition, and the petitioners appealed to the district court, where, after trial before a jury, a verdict was rendered reversing their action, and ordering the proposed street laid out; whereupon the railway company moved the court in the alternative for judgment affirming the action of the village council notwithstanding the verdict, or for a new trial. The trial court granted the motion for judgment, vacated and set aside the verdict, and ordered the entry of judgment affirming the action of the village council. From this order the petitioners appealed to this court, and the order was reversed, but without prejudice to a renewal in the court below of the motion for a new trial. 80 Minn. 67, 82 N. W. 1097. On the cause being remanded, the motion for a new trial was renewed, and subsequently denied, and from the order denying it this appeal was taken.

Several questions are presented and argued by appellant, but, as the result of our consideration of the case is a new trial, only two of them need be considered.

1. It is contended by appellant that the court below, in passing upon the second motion for a new trial, did not exercise the discretion usual on such motions, but instead treated the decision

of this court as controlling its action, and denied the motion because the trial judge felt bound to do so by what was said in our former opinion.

We think the record sustains appellant in this contention; at least it appears to us that the learned trial judge was influenced and controlled in denying the motion very largely, if not wholly, by his construction and interpretation of the former opinion. The only question considered by us on the former appeal was whether the evidence was conclusive that the opening of the proposed street across appellant's right of way would essentially impair the use thereof for railroad purposes. We did not intend to be understood as holding that the evidence was sufficient to sustain the verdict of the jury within the rule as to granting new trials, but simply that it was not conclusive against it; and hence that a judgment notwithstanding the same was not authorized by Laws 1895, c. 320. Such a judgment can only be granted when the evidence is conclusive against the verdict, or, as expressed in Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958, it can only be granted when it is clear that the cause of action or the defense put upon the record does not, in point of substance, constitute a legal cause of action or defense. For the reason that the evidence was not conclusive against the verdict of the jury, the former order was reversed, and the cause remanded without prejudice to the right to renew the motion for a new trial; following Kreatz v. St. Cloud School Dist., 79 Minn. 14, 81 N. W. 533.

The intention of this court was to leave the trial court free to consider and determine such motion as though before it for the first time, and without regard to anything said in our opinion. Had we intended to intimate that a new trial should not be granted on the ground of the insufficiency of the evidence, language would have been employed to that end which could not have been misunderstood. We did not have that question in mind at all at the time of writing the former opinion, but had in mind solely the question whether the case presented by the evidence was one in which final judgment could properly be entered under chapter 320, supra, as interpreted by the Cruikshank case. That

the learned trial judge was controlled by what was there said appears quite evident from his order. He says, "I think the above-named decision of the supreme court will have great, if not controlling, weight in determining the motion,"—referring to the question whether the verdict of the jury was justified by the evidence. Appellant had the right to have its motion for a new trial heard and determined by the trial court uninfluenced, in so far as the exercise of its discretion was concerned, by anything said by this court, and precisely as though the motion were before it for the first time. From the fact that, in the opinion of the trial judge, the evidence was conclusive against the verdict, and such as to authorize final judgment notwithstanding the same, the conclusion is inevitable that, had he not felt bound by the decision of this court, he would have granted a new trial; and, had it been granted, it would certainly have been sustained by this court, even though we stated in the former decision that reasonable minds, guided by a sense of fairness, might reach different conclusions from the evidence.

We said nothing about the weight of the evidence when the case was here before, for we did not feel called upon to go into that question; but we have carefully examined it at this time, and are free to say, though we do not wish to be understood as doing so for the purpose of influencing or controlling the court or jury below, that it tends very strongly to support the action of the village council in refusing to open the street, but it is not conclusive one way or the other. We do not discuss the evidence. It is unnecessary to do so. It is sufficient to say that we have considered it carefully, and conclude that, because of the fact that its weight is clearly against the verdict of the jury, and the further fact that beyond any question the trial judge would have granted a new trial had he not been controlled to the contrary by his construction of the opinion of this court, a new trial should be granted.

The questions presented by the evidence are of more than passing importance with respect to the rights and interests of the respective parties, and no injustice can result from the resubmission of the same to another jury. To adopt the suggestion of

respondent's counsel that the case be sent back to the court below with specific directions to exercise its discretion in the matter of appellant's motion for a new trial, would tend to prolong the controversy, rendering another appeal to this court possible, and we conclude the most appropriate thing to do is to grant a new trial in order that the litigation may come to an end. This the trial court, in the exercise of its discretion, entertaining the opinion of the evidence that it did, ought to have done, and the failure to do so was error.

2. In view of such new trial we deem it proper to consider briefly the question raised by appellant as to the jurisdiction of the village council to lay out the proposed street to the width of eighty feet. It is contended by appellant that the council had no such power under the village charter and statutes of the state, and, in consequence, no jurisdiction to entertain the petition.

We have given this branch of the case careful consideration, and reach the conclusion that the appellant's contention is, in a measure, correct. G. S. 1894, § 1832, provides that all public roads to be laid out by the township supervisors or the county commissioners shall not be less than four rods wide, and may be six rods wide when petitioned for by all the residents whose property adjoins the road. The statute must be construed as a limitation on the authority of such officers with respect to the width of roads, and the question presented is whether the limitation applies to the village of Sleepy Eye. County commissioners or town supervisors can, under this statute, lay out and open public roads to no greater width than four rods, except when petitioned therefor by all the residents whose property adjoins the same. The village of Sleepy Eye was incorporated by Sp. Laws 1879, c. 36. The usual powers and authority incident and pertaining to the government thereof are conferred upon the village by that act, and, among other things, it provides:

"The common council shall have the power and authority to open, lay out, and vacate streets and alleys within the limits of said village, which is conferred by the general laws of the state upon the board of supervisors of townships, * * * and in such laying out or vacating streets or alleys, and the assessment

of damages therefor the common council shall be governed by the act under the general laws of the state providing for the * * * laying out roads." Section 24.

We find no other provision in the charter conferring upon the village authorities any power or authority with respect to laying out, altering, or discontinuing streets other than is conferred by the section just quoted. It requires only a reading of that to show beyond any doubt that the common council has no power or authority on that subject greater than is possessed by town supervisors, either as to the width of proposed streets or in the matter of assessment of damages. The charter provides that the common council shall have the same powers on this subject as are conferred by general laws upon town supervisors, and that in exercising those powers the council shall be governed by and act under such general laws.

It may be true, as suggested by counsel for respondent, that streets in villages in this state are for the most part of a different width than county or town roads, and that the width of such streets will average between seventy and eighty feet; that from this it is apparent that the authority of villages to open or extend their streets should be sufficient to authorize the extension or opening of the same to correspond in width to the streets as actually existing, and that the statutes should be construed as granting such power. If the question were clothed in doubt, the facts stated and the argument and contention of counsel would be important matters in determining the intention of the legislature; but the statute is plain and unambiguous, and can be construed only in the line we have suggested.

An examination of the charters of various villages throughout the state incorporated by special laws discloses the fact that some possess unlimited authority and power in the matter of laying out and opening streets, some are expressly authorized to widen the same, and a large number contain the restrictions found in the charter of this village. If we adopt the construction insisted upon by respondents, we would find great difficulty in harmonizing the various express provisions of larger scope found in other charters. So we hold that the common council of the

village of Sleepy Eye is authorized to lay out, open, or extend streets within the limits of the village to the width of sixty-six feet, and not wider, unless petitioned for by all the residents whose property adjoins the proposed street.

We do not, however, concur with appellant that because of this limitation on the power of the council they have no jurisdiction to entertain the petition in this case. It is true that it prays for the opening of the proposed street to the width of eighty feet, but no reason occurs to us why it might not be entertained, and the proposed street laid out and opened to the width of sixty-six feet, if conditions be found to justify the opening of the same. The mere fact that the petition asks for more than the council is authorized to grant does not necessarily oust that body of jurisdiction.

Order reversed, and new trial granted