Syllabus.

LACEY L. HARDESTY, trading as HARDESTY-ESKRIDGE COMPANY, *vs.* AMERICAN RAILWAY EXPRESS COMPANY, a corporation of the State of Delaware.

**1.  CARRIERS—CARRIER NOT INSURER AGAINST DELAYS IN TRANSIT NOR AGAINST PERISHABLE QUALITY OF GOODS.**

In the absence of a specific agreement as to time, a common carrier, though responsible for negligence, is not an insurer against delays in transit, nor is it, in the absence of proof of negligence, an insurer against or responsible for any inherent natural tendency of perishable property to depreciate or decay.

**2.  CARRIERS—COMMON-LAW DUTY OF CARRIER STATED.**

Under its common-law duty a carrier is bound to use all reasonable effort to deliver all shipments received by it in a reasonable length of time under the circumstances proved, having due regard for the character of the shipment, the apparent necessity for its speedy delivery if of a perishable nature, and all other facts in the case.

**3.  CARRIERS—CARRIER MUST USE CARS ADAPTED FOR PERISHABLE GOODS.**

It is the duty of a carrier to exercise such a degree of diligence in the care of all shipments as the character of the goods shipped and the circumstances require; when a carrier undertakes the transportation of perishable goods, it is its duty to furnish cars especially adapted to the preservation of that class of goods, and, if refrigerator cars are the only reasonably safe means of transporting such goods to their destination, cars of that character must be furnished.

**4.  CARRIERS—CARRIER MUST ICE CARS CONTAINING PERISHABLE GOODS AT POINT OF SHIPMENT AND RE-ICE DURING TRANSIT IF NECESSARY.**

If the class of goods shipped by a carrier reasonably require refrigeration for their preservation, it is the duty of the carrier, not only to furnish refrigerator cars to transport such shipment, but, in the absence of a voluntary assumption of that duty by the shipper, to ice such cars properly at the point of shipment, and also to re-ice them at such times and places along the route as may be reasonably necessary to preserve the shipment.

**5.  CARRIERS—DEGREE OF CARE REQUIRED BY CARRIER IN TRANSPORTING DEPENDS UPON PERISHABLE NATURE OF GOODS; "NEGLIGENCE."**

Negligence is the failure to exercise due care under all the facts and circumstances proved, and the diligence required of a carrier may increase or diminish according to the character of the goods shipped; the degree of care required being increased where the shipment is of a perishable nature.

**6.  NEGLIGENCE—PREPONDERANCE OF EVIDENCE REQUIRED.**

Negligence must be proved by the preponderance of the evidence, which does not mean by the mere number of witnesses, but by the weight of the evidence under all the facts and circumstances proved.

**7.  CARRIERS—DELAY IN SHIPMENT PRIMA FACIE EVIDENCE OF NEGLIGENCE BUT IS SUBJECT TO REBUTTAL.**

Any delay in the transportation and delivery of perishable property to a consignee causing damage thereto may be considered by the jury as prima facie evidence of negligence against a carrier, which it may rebut by proof that such delay was not caused by any negligence on its part.

8. CARRIERS—FAILURE TO ICE GOODS OF PERISHABLE NATURE CONSTITUTES NEGLIGENCE.

A failure on the part of a carrier to ice a car of perishable fruit in a proper manner at the point of shipment, or to re-ice the same in transit if re-icing is reasonably necessary for its preservation, constitutes negligence, unless such duty is voluntarily assumed by the shipper.

9. CARRIERS—GOODS DELIVERED IN DAMAGED CONDITION OR PART MISSING RAISES PRIMA FACIE PRESUMPTION THAT LOSS OR DAMAGE CAUSED BY NEGLIGENCE OF CARRIER.

Where it is proved that goods shipped were delivered to the carrier in good order, but that when delivered to the consignee they were damaged, or a part of them was missing, a prima facie presumption that the loss or damage was caused by the negligent act of the carrier will arise, and, unless it can show that such loss or damage was due to some cause for which, by law, or under its contract, the carrier would be excused, it will be liable.

10. CARRIERS—MEASURE OF DAMAGES FOR FAILURE TO DELIVER PERISHABLE GOODS TO CONSIGNEE STATED.

In an action against an express company for failure to deliver part of a shipment of strawberries, *held* the measure of damages would be the market value at the place where and time when delivery should have been made of such of the strawberries as the defendant carrier failed to deliver to the consignee.

11. CARRIERS—MEASURE OF DAMAGES TO PERISHABLE GOODS FROM DELAY FOR FAILURE TO ICE IN TRANSIT STATED.

In an action against an express company for failure to deliver a shipment of strawberries within a reasonable length of time and for failure to re-ice in transit, the measure of damages is the difference, if any, between the market value at the place of delivery of the goods in their damaged state and their value if they had been delivered in good order.

*(October* 10, 1922.)

RICE and HARRINGTON, J. J., sitting.

*Daniel J. Layton* for plaintiff.

*Frank M. Jones* for defendant.

Superior Court for Sussex County, October Term, 1922.

Summons case, No. 1 February term, 1921.

Action against the defendant, a common carrier, to recover; first, for its failure to deliver 15 crates, out of a total shipment of

206 crates of strawberries, consigned by the plaintiff from Princess Anne, Maryland, to Jersey City, New Jersey, June 3, 1920; second, for negligent delay in delivering to the consignee at Jersey City, New Jersey, 253 crates of strawberries shipped in a refrigerator car from Seaford, Delaware, June 12, 1920; third, for negligent failure to properly refrigerate said Seaford Shipment while in transit.

The plaintiff produced a bill of lading for 206 crates of stawberries in the shipment of June 3, 1920, from Princess Anne, Maryland, and showed the delivery of 191 crates to the consignee, or a failure to deliver 15 crates of said shipment.

He also showed that the Seaford shipment of June 12, 1920, was in a refrigerator car; that this car was properly and voluntarily iced by the plaintiff at the point of shipment; that the usual running time between Seaford and Jersey City was from eight to ten hours; that based on such time this car should have been delivered to the consignee in time for the early market of Monday, June 14th; that by reason of an overturned coal car blocking the tracks of the yard used by the defendant, the Seaford car was not delivered to the consignee until early in the morning of Tuesday, June 15th; that said berries were in good condition when delivered to the carrier, and that by reason of the delay in delivery, the berries were damaged when delivered to the consignee.

The evidence of the defendant tended to show that the original seal of the Princess Anne car was intact when the car was placed for delivery to the consignee in the yard at Jersey City. The defendant, therefore, contended that the plaintiff had loaded only 191 crates of strawberries in said car, instead of 206 crates, as claimed by him. Defendant's evidence also tended to show that there was no delay in transit in the Seaford shipment; that such car was placed in the usual manner for unloading at about .2 o'clock in the morning of Tuesday, June 14th, that it was, therefore, ready for unloading in time for the early market of that day, and that any delay in unloading was due to the negligence of the consignee and not to any negligence of the defendant.

HARRINGTON, J., charging the jury:

In order for the plaintiff to recover, he must prove to your satisfaction by a preponderance of the evidence, one or more of the acts alleged in the declaration. There are three things alleged: first, the acceptance of a certain quantity of strawberries in its capacity as a common carrier, and a failure to deliver the same to the consignee; second, negligent delay in transporting and delivering certain perishable property, namely, strawberries; and third, negligent lack of proper refrigeration in said delayed shipment of strawberries.

In *Klair & Hollingsworth v. P. B. & W. R. R.*, 2 *Boyce* 274, 302, 78 *Atl.* 1085, 1096, this court said:

"The liability of a common carrier has been well stated by our own courts, and we say to you as was said in the case of *Klair v. Wilmington Steamboat Co.*, 4 *Penn.* 51, 54 *Atl.* 694: 'A common carrier is bound to exercise the strictest care, and to deliver safely at their place of destination, the goods entrusted to him. He is regarded by the law in the light of an insurer; and in case the goods are injured, lost or destroyed, nothing will excuse or discharge him, but the act of God, or of the public enemies. By the act of God, is meant such inevitable accident as cannot be prevented by human care, skill or foresight, but results from natural causes, such as lightning and tempest, floods and inundation, etc.' * * * Therefore, in actions against common carriers, founded on their ordinary liability for the loss of goods, the inquiry is not whether the carrier has used due care, or been guilty of negligence, but whether he can show that the loss happened by inevitable accident or by the public enemies."

[1] This rule is subject, however, to some modifications. In the absence of a specific agreement as to the time for delivery, it is well settled that a common carrier, though responsible for negligence, is not an insurer against delays in transit. It is also well settled that it is not an insurer against, nor, in the absence of proof of negligence on its part, is it responsible for any inherent natural tendency of perishable property to depreciate or decay. *Truax v. P. W. & B. R. R. Co.*, 3 *Houst.* 233, 245; *P. R. R. Co. v. Clark*, 118 *Md.* 514, 85 *Atl.* 613; 10 *C. J.* (*Carriers*) § 148, *p.* 122.

[2] Under its common-law duty, a carrier is bound to use all reasonable effort to deliver all shipments received by it in a reasonable length of time under the circumstances proved; having

due regard for the character of the shipment, the apparent necessity for its speedy delivery, if of a perishable nature, and all other facts in the case. *Truax v. P. W. & B. R. R. Co.*, 3 *Houst.* 233, 247; *Reed and Walker v. P. W. & B. R. R. Co.*, 3 *Houst.* 176, 207; *N. Y. P. & N. R. R. Co. v. Peninsula Produce Exchange*, 122 *Md.* 215, 89 *Atl.* 433; *Stevens v. Northern Central R. R. Co.*, 129 *Md.* 215, 98 *Atl.* 551; *Pa. R. R. Co. v. Clark*, 118 *Md.* 514, 85 *Atl.* 613; 4 *R. C. L.* (*Carriers*) 206.

[3] It is likewise its duty to exercise such a degree of diligence in the care of all shipments as the character of the goods shipped and the circumstances require. When a carrier undertakes the transportation of perishable property, it is its duty to furnish cars especially adapted to the preservation of that class of property, and if refrigerator cars are the only reasonably safe means of transporting such property to its destination, cars of that character must be furnished. 2 *Hutch. on Carriers*, § 503; 10 *C. J.* (*Carriers*) *pp.* 86, 92; 4 *R. C. L.* 201.

[4] If the class of goods shipped reasonably require refrigeration for their preservation, it is the duty of the carrier, not only to furnish refrigerator cars to transport such shipment, but in the absence of a voluntary assumption of that duty by the shipper, to ice said cars properly at the point of shipment, and also to re-ice the same at such times and places along the route as may be reasonably necessary to preserve the shipment.

This duty is in no way dependent upon an express contract, and the carrier's liability is not affected by the fact that the bill of lading is silent on the subject. *Beard v. Ill. Cent. Ry.*, 79 *Iowa* 518, 44 *N. W.* 800, 7 *L. R. A.* 280, 18 *Am. St. Rep.* 381; *P., B. & W. v. Diffendal*, 109 *Md.* 494, 72 *Atl.* 193, 458; *Brennisen v. P. R. R.*, 100 *Minn.* 102, 110 *N. W.* 362, 10 *Ann. Cas.* 169; *Taft Co. v. American Express Co.*, 133 *Iowa* 522, 110 *N. W.* 897, 119 *Am. St. Rep.* 642; 10 *C. J.* 92; 1 *Michie on Carriers*, 786.

[5] Negligence is the failure to exercise due care under all the facts and circumstances proved, and the diligence required of the carrier may increase or diminish according to the character of the goods shipped; the degree of care required being increased where

the shipment is of a perishable nature.    *Truax v. P. W. & B. R. R. Co.*, 3 *Houst.* 233, 248.

[6] Like any other fact required to be proved by the plaintiff, negligence is never presumed, but must be proved by him by the preponderance of the evidence.  By this, however, we do not mean by the mere number of the witnesses, but by the weight of the evidence under all the facts and circumstances proved.

[7, 8] Any delay in the transportation and delivery of perishable property to a consignee, causing damage thereto, may be considered by you as prima facie evidence of negligence.  *P. R. R. Co. v. Clark*, 118 *Md.* 514, 85 *Atl.* 613.  But such proof is merely prima facie evidence against the defendant, the carrier, and may be rebutted by it by proof that such delay was not caused by any negligence on its part.  Likewise, a failure to ice a car of perishable fruit, in the proper manner, at the point of shipment, unless such duty was voluntarily assumed by the shipper, or to re-ice the same in transit, if re-icing was reasonably necessary for its preservation under the circumstances, would constitute negligence.

[9] Where it is proved that goods shipped were delivered to the carrier in good order, but that when delivered to the consignee they were damaged, or a part of them was missing, a prima facie presumption that the loss or damage was caused by the negligent act of the carrier will arise; and unless it can show that such loss or damage was due to some cause for which, by law, or under its contract, the carrier would be excused, it will be liable.  *Schagrin v. Bacon*, 2 W. W. Harr. (32 *Del.*) 11, 117 *Atl.* 741; *Brennisen v. P. R. R. Co.*, 100 *Minn.* 102, 110 *N. W.* 362, 10 *Ann. Cas.* 169, *note; P. B. & W. v. Diffendal*, 109 *Md.* 494, 72 *Atl.* 193, 458; *N. Y. & B. T. Co. v. Baer*, 118 *Md.* 73, 84 *Atl.* 251; 4 *R. C. L.* 916, 917; 10 *C. J.* 372; 3 *Hutch. on Carriers, p.* 1598.

[10] If your verdict should be for the plaintiff for the alleged failure of the defendant to deliver any part of the strawberries in the shipment of June 3, 1920, from Princess Anne, Maryland, the measure of damages would be the market value at the place where and time when delivery should have been made of such of the strawberries in said shipment as the defendant failed to deliver to

the consignee. *Hutchinson on Carriers*, § 1360, 10 *C. J. p.* 395; *Spring v. Haskell*, 4 *Allen (Mass.)* 112.

[1] If your verdict should be for the plaintiff, either for a negligent failure of the defendant to deliver the Seaford shipment of June 12, 1920, in a reasonable length of time, or, for a negligent failure to re-ice in transit the refrigerator car in which said strawberries were shipped, the measure of damages would be the differnce, if any, between the market value at the place of delivery of the goods in their damaged state and their value if they had been delivered in good order. *Hutchinson on Carriers*, § 1366, 10 *C. J. pp.* 307, 308; *Ruppel v. Alleghany R. R. Co.*, 167 *Pa.* 166, 31 *Atl.* 478, 46 *Am. St. Rep.* 666.

If you should find for the defendant, your verdict should merely be for the defendant.

Verdict for plaintiff.